## JOHN D. HEROLD

### v.

## JULIA HEROLD.

1. When a husband, not entirely blameless for the act, makes no effort to prevent his desertion by his wife, and acquiesces in and appears satisfied with its continuance, he is not entitled to a divorce on the ground of desertion.

2. A wife, claiming that her abandonment of her home was caused by the conduct of her husband, must, in the face of his denial, if she seeks a divorce on the ground of desertion, sustain her claim by the corroborative evidence of circumstances, or of other witnesses. .

On final hearing on bill, answer and proofs taken in open court.

*Mr. William Brinkerhoff,* for the complainant.

*Mr. Warren Dixon,* for the defendant.

GREEN, V. C.

The complainant brings this suit for divorce from his wife, on the ground of willful, obstinate and continued desertion for three years. The defendant having failed to appear within the time prescribed in the order of publication against her as an absent defendant, the cause proceeded *ex parte,* and on the report of the master to whom the cause was referred being made, a decree of divorce was entered in favor of the complainant. On application by the defendant this decree was opened, and she was allowed to come in and defend. She has filed an answer denying the desertion, and, by way of cross-bill, alleges desertion on the part of complainant for three years, and asks for a decree in her favor.

The parties were married in the city of New York on the 10th day of December, 1876. Complainant was a widower, forty-five years of age, with five children, and lived with his family in Ninth street in that city, his place of business being on the ground floor of his place of residence.

Herold *v.* Herold.

The defendant was a widow, from appearances not the junior of the complainant. She had three children, and the control of some money as the guardian of those children.

After the marriage the parties lived at the residence of the complainant, in Ninth street, in New York city. There is no evidence whatever to support the allegations of the bill, that defendant was addicted to the free use of liquor, and was frequently in a state of intoxication.

The complainant and his son and daughter testify that the defendant was quarrelsome, jealous and abusive; that almost from the time of her marriage she was unkind to her husband. This seems exaggerated, and is inconsistent with the other testimony of the daughter, that defendant was kind and indulgent to the children, and that they all got along very well, except the boy, who seems to have exercised his ingenuity to make her life miserable. It appears that she bought, with her own money, furniture, clothes and a piano for the girls, paid for their education, and that she loaned the complainant $3,500 of the money belonging to her children, on a mortgage, besides furnishing him with other sums in his business. She, on her part, says that occasionally, if not frequently, her husband returned late at night intoxicated, and when in that state would boast of his amours with other women, and speak disparagingly of her age and appearance. His denial of this is quite as positive as her statement.

There can be no doubt, however, that long before the separation the relations between the two were anything but those which should exist between man and wife. She admits her jealousy, and gives as her reason for it the stories he related when in his cups. She testifies to her unhappiness from his treatment and that of his son. She says that when she could not give him any more money he treated her in this manner, and intimates this was the reason for his change towards her.

It appears that this condition of affairs culminated in a quarrel; she ceased to attend to any of the household duties, and at last, on January 2d or 3d, 1877, after they had been married a year and a few days, told him plainly that she could not and would not live with him any longer. He sent for a neighbor and, in

his presence, told him his wife wanted to leave him; that this was her home, and where she belonged, and if she went away he would not be responsible for anything. Great stress is laid upon this interview to show that her going was against his wish. It appears strange that a husband should call in his neighbor to hear his wife announce. her determination to leave, but in this case, as that neighbor had been in the habit of giving money to the wife, which complainant had paid, the suspicion is created that the neighbor was called to hear the declaration that if she went he would not be responsible for her debts, rather than the protest to her going.

Beyond the declaration in the neighbor's presence, complainant took no steps to induce his wife to remain. This interview was in the morning; she did not leave until the evening, and he does not pretend that he reasoned with her, that he tried to reconcile her, or that he ever saw her again after the morning interview in the shop, except on a single occasion at a friend's house.

In the afternoon she took all her property, employed a cartman and moved her things away. The evidence fails to justify defendant in her departure from her home, and relieve her from the charge of willful desertion, yet complainant cannot claim to have been free from blame in not correcting the causes of her dissatisfaction, and in permitting her departure without an attempt at reconciliation. It appears that the parties met at a Mr. Stein's some six months after the separation. What the object of the meeting was does not clearly appear. Whether it was with reference to a suit she had commenced against him in New York, or with reference to the mortgage he had given to secure her for the $3,500 of her children's money she had loaned to him, or both, is uncertain. He says that he then asked her to return. She denies this, and says she was willing to return if he had asked her and would insure that she would be properly treated. No reconciliation, however, was effected, and it appears that such representations were then made to her, as to the value of the security he had given her, that she parted with her $3,500 mortgage for $1,000 or $1,200.

Herold *v.* Herold.

Complainant has, ever since defendant left him, maintained his connection with the business in Ninth street, and continued to reside there until he removed to New Jersey, in September, 1885. After the separation defendant went to live at 213 Eighth street, New York city, and for some years kept a little store at that place, and supported herself by its business and by collecting rents for a friend. While engaged in the latter occupation, and at other times, she says she frequently met him, but that they never recognized or spoke to each other. He denies that he saw her on these occasions, but it is clear he would not have spoken to her if he had seen her. Her residence was known to his daughter and to mutual friends, yet he made no inquiry with reference thereto, or any effort to secure an interview. With the exception of his remarks to her in the shop, and his testimony of what he claims to have said at Stein's (which she denies), there is nothing to show that her original departure, and her subsequent separation, was not in consonance with his wishes, and entirely agreeable to him. He admits he never made any attempt to ascertain her whereabouts, never communicated in any way with her, or made any effort whatever towards a reconciliation.

It is abundantly established, that a husband who, not being blameless for the act, makes no effort to prevent his desertion by his wife, and appears to acquiesce in and be satisfied with its continuance, cannot appeal successfully to the court for a divorce on the ground of desertion. *Cornish* v. *Cornish, 8 C. E. Gr. 208; Belden* v. *Belden, 6 Stew. Eq. 94; Grant* v. *Grant, 9 Stew. Eq. 502; Bowlby* v. *Bowlby, 10 C. E. Gr. 406; Taylor* v. *Taylor, 1 Stew. Eq. 207; Rittenhouse* v. *Rittenhouse, 2 Stew. Eq. 274.*

The defendant, by her answer by way of cross-bill, seeks a divorce on the ground of willful, continued and obstinate desertion for three years. As she was the one who actually left the other, she invokes the rule, that where a wife is obliged, by the cruelty or violence of her husband, to leave him for safety or to avoid personal injury, this compulsory flight on her part amounts to a desertion, under our statute, by him. In these cases the wife has the burden of proof upon her to show that her abandonment was not voluntary, but that she was compelled to go by his

treatment or command. *Starkey* v. *Starkey, 6 C. E. Gr. 136.*
As before suggested, I do not think she has sustained her claim.
While she testifies to much that might reasonably engender
jealousy and create unhappiness, she admits it only happened
when her husband was the worse for drink.    He contradicts her
testimony as to his intoxication, his lewdness or his having
boasted of profligacy.    There is no evidence whatever of his
association with women of even suspicious or questionable char-
acter, and the testimony of other witnesses clears him of the
imputation of habitual inebriety.    To establish such conduct on
the part of the husband as will not only justify the wife in leav-
ing her home, but convert such abandonment into the husband's
desertion in the eye of the law, more than the uncorroborated
testimony of the wife should, in the face of his denial, be required.
*Fisher* v. *Fisher, 3 C. E. Gr. 300;    Franz* v. *Franz, 5 Stew. Eq.
483;    Sandford* v. *Sandford, 5 Stew. Eq. 420;    Pullen* v. *Pullen,
2 Stew. Eq. 541;    Tate* v. *Tate, 11 C. E. Gr. 55;    Belton* v. *Belton,
11 C. E. Gr. 449;    Reid* v. *Reid, 6 C. E. Gr. 331;    Woodworth* v.
*Woodworth, 6 C. E. Gr. 251;    Cummins* v. *Cummins, 2 McCart.
138;    McShane* v. *McShane, 18 Stew. Eq. 341.*

If the willingness to return to her marital duties, which she
testifies she entertained, had materialized into any manifestation
prior to three years before the commencement of this suit, she
might have put complainant in the wrong if he had rejected such
advances.    But she admits she was restrained by her pride, which
might avail her as an excuse against his suit, but cannot shift
the responsibility of her actual abandonment when she appeals
to the court for affirmative relief.    She testifies that she wrote to
him, but this was within the statutory period prior to the filing
of her answer, and if it was in fact such an advance as to make
him responsible for the subsequent separation, it is insufficient to
authorize a decree in her favor.

The whole evidence, however, impresses me with the opinion
that the separation of these parties was distasteful to neither in
its inception, and was satisfactory to both in its continuance; that
however willful it was as to each, and while it continued for
many years without interruption, it cannot be said to have been

obstinate in the sense which obtains with reference to desertion under our statute.

The bill and cross-bill must be dismissed, with costs of the original bill to the defendant. This result renders an examination of other points unnecessary.